UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

TRINEY LAVELLE PRICE                    CIVIL ACTION NO. 20-0072

                                        SECTION P

VS.

                                        JUDGE TERRY A. DOUGHTY

WARDEN PATRICK JOHNSON, ET AL.          MAG. JUDGE KAREN L. HAYES

### REPORT AND RECOMMENDATION

Plaintiff Triney Lavelle Price, a prisoner at Ouachita Correctional Center ("OCC") proceeding pro se and in forma pauperis, filed the instant proceeding on approximately January 15, 2020, under 42 U.S.C. § 1983. He names the following defendants: Warden Patrick Johnson, Captain Paul Campbell, and Detective Wade Murphy.[1]

For reasons below, the Court should retain Plaintiff's claim that he is denied his right to practice his religion and his claim that he is confined under conditions depriving him of mental health.[2] The Court should dismiss Plaintiff's remaining claims, as well as his requests for a transfer and monetary relief.

### Background

Plaintiff claims that, when he arrived at OCC on July 1, 2019, Warden Patrick Johnson, acting on a "personal vendetta" against him, placed him in a two-person cell which Plaintiff refers to as "lockdown." [doc. # 1, pp. 3-4, 7]. He surmises that Warden Johnson must have had

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

[2] The undersigned directed the Clerk of Court, in a separate Memorandum Order, to serve Plaintiff with summons forms for the additional claims.

a personal vendetta against him because he did not "pose a threat to security or receive any disciplinary report" prior to his assignment to lockdown, and everyone else assigned to lockdown was there "for medical purposes or 'disciplinary reports' or protected custody." [doc. #s 1, pp. 3-4; 8, p. 5]. He adds that he and Warden Johnson were involved in a "really bad verbal argument" in 2016. [doc. # 8, p. 6].

Some officers did inform Plaintiff that he was in lockdown for "past nature of offenses." [doc. # 1, pp. 3-4]. He concedes that, in the past, he was "written up . . . for sex offenses, aggravated disobedience, disrespect, defiance, disorderly conduct, general prohibited behavior, and contraband." [doc. # 8, p. 6]. However, he maintains that he "should have a chance in population like every other inmate" at OCC. [doc. # 1, p. 3].

Plaintiff claims that Warden Johnson violated his right to equal protection. *Id.* at 5. He alleges: "99% of OCC prison-jail population has had disciplinary reports, some of whom have had charges placed on them for illegal drugs, battery of a correctional officer, and damage to property. All of these offenders have been allowed to go back into population." *Id.* He adds, "everyone else at [OCC] is receiving" their rights under the Equal Protection Clause. [doc. # 8, p. 3].

Plaintiff claims that, in lockdown, he is denied telephone privileges, access to the law library kiosk, religious services, good-time classes and self-help programs, daily showers, television, adequate visitation, adequate time out of his cell, and outside recreation. [doc. # 1, pp. 5-6]. The lack of outdoor recreation causes him mental anguish and emotional distress. *Id.* at 7. He also lacks cleaning supplies to sanitize his cell. [doc. # 8, p. 4].

Plaintiff claims that Captain Campbell intentionally destroyed his grievances concerning his mistreatment and placement in lockdown. *Id.* at 2. He also claims that Campbell erroneously denies his grievances and will not permit him to attend good-time classes. *Id.* at 2-3.

Plaintiff alleges that he has endured pain, suffering, high blood pressure, suicidal thoughts, emotional distress, mental anguish, depression, anxiety, and a deteriorating mental capacity. [doc. #s 1, p. 7; 8, p. 10]. He seeks placement in "population" at OCC and $600,000.00 for his emotional distress and mental anguish. [doc. #s 1, p. 8; 8, p. 11].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis*,* his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.*  A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely.  *Twombly, supra.*

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint.  In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions.  *Iqbal, supra.*  A pleading comprised of  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id.*  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride*

4

*Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010).  Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint."  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint.  *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).  A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone.  *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."  *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted).  Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions."  *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Procedural Due Process

Plaintiff claims that, when he arrived at OCC on July 1, 2019, Warden Patrick Johnson, acting on a "personal vendetta," placed him in a two-person cell which Plaintiff refers to as "lockdown."[4]  [doc. # 1, pp. 3-4, 7].  Some officers did inform him that he was in lockdown for "past nature of offenses."  [doc. # 1, pp. 3-4].  He concedes that, in the past, he was "written up . . . for sex offenses, aggravated disobedience, disrespect, defiance, disorderly conduct, general prohibited behavior, and contraband."  [doc. # 8, p. 6].  However, he maintains that he "should have a chance in population like every other inmate" at OCC.  [doc. # 1, p. 3].

---

[4] Plaintiff's description of lockdown reflects what some refer to as administrative segregation, closed-custody restriction, close or closed-cell restriction, extended lockdown, "the hole," solitary confinement, or isolation.

Plaintiff's placement in lockdown, however, does not implicate a protected property or liberty interest; thus, he does not plausibly claim that he was denied procedural due process.

"'Inmates have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)).  "'[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim' because it 'simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'"  *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (quoting *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996)); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest.").  "In other words, segregated confinement is not grounds for a due process claim unless it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).[5]

The Court must determine whether Plaintiff's isolation constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life, such that a liberty interest in avoiding the deprivation arises."  *Wilkerson*, 774 F.3d at 853 (internal quotation marks and quoted source omitted).  "In deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and [*Wilkinson*] considered the *nature* of the more-restrictive confinement and its *duration* in relation to prison norms and to the

---

[5] "Extraordinary circumstances" and "without more" are simply "alternative statements of the *Sandin* test: administrative segregation 'without more' or 'absent extraordinary circumstances' is administrative segregation that is merely incident to ordinary prison life, and is not an 'atypical and significant hardship' under *Sandin*."  *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014).

terms of the individual's sentence." *Id.* (emphasis added). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (cited with approval by *Wilkerson*, 774 F.3d at 854). "In essence, courts employ a sliding scale, taking into account how bad the conditions are and how long they last." *Bailey v. Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016). "On such a sliding scale, truly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be." *Id.*

With all of that said, however, the "Fifth Circuit recently suggested that two and a half years of segregation is a threshold of sorts for atypicality, such that 18-19 months of segregation under even the most isolated of conditions may not implicate a liberty interest." *Id.* (citing *Wilkerson*, 774 F.3d at 855).

Here, Plaintiff has been in lockdown since July 1, 2019. Even "under the most isolated of conditions," this (approximately eight-month) period of segregation was not excessive in degree. See *Bailey*, 647 Fed. App'x at 476. While he remains in lockdown, his prison release date is April 4, 2020;[6] thus, his confinement in lockdown is not indefinite and will continue approximately nine months. As Plaintiff presents no extraordinary circumstances and alleges no atypical or significant hardships, he does not state a plausible procedural-due-process claim.[7]

---

[6] TELEPHONE CALL TO OFFENDER LOCATOR, Louisiana Department of Public Safety and Corrections (February 25, 2020).

[7] See *Bailey*, 647 Fed. App'x at 476 (finding that, if the prisoner was confined less than approximately nineteen months in segregation, he would not state a claim even considering that he was in lockdown 23-24 hours each day, that he lacked visitation, that he lacked contact with other prisoners, that he could not attend religious gatherings or educational/vocational programs,

**3. Equal Protection**

Plaintiff claims that Warden Johnson violated his right to equal protection when he placed him in lockdown. He alleges: "99% of OCC prison-jail population has had disciplinary reports, some of whom have had charges placed on them for illegal drugs, battery of a correctional officer, and damage to property. All of these offenders have been allowed to go back into population." He adds, "everyone else at [OCC] is receiving" their rights under the Equal Protection Clause. [doc. # 8, p. 3].

To reiterate, officers did inform Plaintiff that he was in lockdown for "past nature of offenses." [doc. # 1, pp. 3-4]. He concedes that, in the past, he was "written up . . . for sex offenses, aggravated disobedience, disrespect, defiance, disorderly conduct, general prohibited behavior, and contraband." [doc. # 8, p. 6]. However, he maintains that he "should have a chance in population like every other inmate" at OCC. [doc. # 1, p. 3].

To establish an equal protection claim, a plaintiff must allege that defendants treated "two or more classifications of similarly situated persons" differently.[8] *Duarte v. City of Lewisville,*

---

that he lacked entertainment and "canteen," that he could rarely use the telephone, and that he could only shower three times per week); *Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *1 (5th Cir. Feb. 20, 2020) (finding no atypical or significant hardship where the plaintiff was punished with "forty-five days of cell restriction, forty-five days of commissary restriction, loss of 350 days of good time credits, no contact visits for four and a half months, closed custody lockdown confinement for one year, and a demotion in line classification."); *see also Palmer v. Cain*, 350 F. App'x 956, 957 (5th Cir. 2009) (finding that due process was not required because the appellant's 97 days in administrative segregation were not sufficiently atypical or significant); *Lewis v. Dretke*, 54 F. App'x 795 (5th Cir. 2002) (finding no claim where the prisoner "received 30 days' cell and commissary restriction (including loss of recreation and library privileges, as well as the ability to attend religious services), 90 days' loss of telephone privileges, 15 days of solitary confinement, a reduction from trustee class 4 to line class 1, and an increase of his custody level from minimum to medium."); *Perry v. Allemand*, 687 F. App'x 352, 353 (5th Cir. 2017) (finding no claim where the prisoner was housed in a special tier for six months without visitation privileges).

[8] "[T]here is no precise formula to determine whether an individual is similarly situated to

*Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (quoting *Gallegos–Hernandez v. U.S.*, 688 F.3d 190, 195 (5th Cir. 2012)). "Once that threshold element is established, the court then determines the appropriate level of scrutiny to apply." *Id.* "Strict scrutiny is required if the [] classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *Id.* at 354 (quoting *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995)). "If neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relation to a legitimate governmental purpose." *Id.* "Under rational basis review, differential treatment must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."[9] *Hines v. Aldredge*, 783 F.3d 197, 202-03 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Madriz–Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004)).

Here, Plaintiff alleges that Warden Johnson placed him in lockdown to fulfill a personal vendetta. Plaintiff, however, fails to identify others who were similarly situated but were either not placed in lockdown or were released from lockdown sooner. For instance, he does not

---

comparators." *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 233 (5th Cir. 2012) (internal quotation marks and quoted source omitted). "The inquiry is case-specific and requires [courts] to consider the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision." *Id.*

[9] "[T]he Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." *Duarte*, 858 F.3d at 355. "As long as there is a conceivable rational basis for the official action, it is immaterial that it was not the or a primary factor in reaching a decision or that it was not actually relied upon by the decisionmakers or that some other nonsuspect irrational factors may have been considered." *Id.* (quoted source omitted). In other words, "[t]he actual reason for a state action is irrelevant for claims reviewed under rational-basis scrutiny and will be upheld if 'any state of facts reasonably may be conceived to justify [its discrimination].'" *Newman Marchive P'ship, Inc. v. Hightower*, 349 F. App'x 963, 965 (5th Cir. 2009) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)).

specify that others who were not assigned to lockdown or who were released from lockdown sooner shared his criminal history, his affiliations, his medical history, convictions for crimes with similar degrees of violence or prurience, his sentence, his institutional record, his behavioral history while confined, his work history, his date of arrival at the institution, his mental and physical condition, his age, similar lengths of confinement, risks of escape, or any other factors that prison officials, in their discretion, could consider in determining whether to assign a prisoner to lockdown.[10]  While Plaintiff does allege that others—who incurred disciplinary violations and criminal charges for illegal drugs, battery of a correctional officer, and damage to property—were allowed to return to "population," he does not allege that these prisoners were released from lockdown sooner (i.e. treated superiorly), and he does not sufficiently allege that they were similarly situated.[11]

  The Court should dismiss this claim.

---

[10] See *Stevenson v. Louisiana Board of Parole*, 265 F.3d 1060 (5th Cir. 2001) ("Although [the plaintiff] asserts that the other prisoners who were eligible . . . were similarly situated to him, Stevenson has not demonstrated that their criminal records and offenses were sufficiently similar to his circumstances . . . [and it] is also obvious that the discretionary decision to grant parole must be made on a case-by-case basis based on the unique circumstances of each prisoner."); *Hernandez v. Velasquez*, 522 F.3d 556, 563 (5th Cir. 2008) (noting that prison officials may use segregated confinement "simply because the prison has no other space, wishes to protect some prisoners from others, wishes to keep prisoners isolated from one another in order to minimize the risk of riots or other disturbances, wishes to prevent the spread of disease, and so forth.") (quoting *Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997)); see also *Rowe v. Cuyler*, 534 F. Supp. 297, 301 (E.D. Pa.), aff'd, 696 F.2d 985 (3d Cir. 1982) ("[N]o two prisoners, being different human beings, will possess identical backgrounds and characters.  Indeed, it is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics.").

[11] See *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018) ("Rountree's equal-protection claim fails because he did not sufficiently allege that he has been treated differently from others similarly situated.  His complaint generally alleges that other similarly situated individuals were treated differently, but he points to no specific person or persons and provides no specifics as to their violations.").

**4. Retaliation**

Plaintiff suggests that Warden Johnson placed him in lockdown in retaliation for a "really bad verbal argument" they had in 2016.  [doc. # 8, p. 6].  The altercation was allegedly the source of Warden Johnson's personal vendetta.

To prevail on a retaliation claim, a plaintiff must prove: (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which in this context means that, but for the retaliatory motive, the complained of incident would not have occurred.  *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir. 1998).  Courts must "carefully scrutinize" retaliation claims to "assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them."  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).[12]

A plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may be plausibly inferred.  *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995).  "Mere conclusory allegations of retaliation are insufficient[,] . . . a plaintiff must allege more than his personal belief that he has been the victim of retaliation."  *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).  With respect to the third prong above, "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights."  *Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. 2013).

Here, even construing his pleadings liberally in his favor, Plaintiff does not allege that Warden Johnson retaliated because Plaintiff exercised a constitutional right.  At best, Plaintiff

---

[12] "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."  *Id.* (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

intimates that he was exercising his right to speak freely under the First Amendment. However, Plaintiff does not identify the content, location, or context of his speech.

Moreover, Plaintiff neither produces direct evidence of motivation nor alleges a chronology of events from which retaliation may be plausibly inferred. He alleges that the verbal altercation occurred in 2016; however, Warden Johnson placed him in lockdown three years later on July 1, 2019. The undersigned cannot plausibly infer retaliation from this protracted chronology.

Overall, Plaintiff's claim is conclusory. The Court should dismiss it.

**5. Conditions of Confinement**

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's necessities."[13] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from

---

[13] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[14]  However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

### A. Good-Time Classes and Self-Help Programs

Plaintiff claims that, in lockdown, he lacks access to good-time classes and self-help programs.

Plaintiff, however, has no constitutional right to participate in these classes and programs. *McBride v. Powers*, 364 F. App'x 867, 870-71 (5th Cir. 2010) (holding that the plaintiff "failed to state a claim for violation of his equal protection or due process rights, as inmates have no constitutional right to participate in rehabilitative or educational programs while incarcerated."); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) ("[A] state has no constitutional obligation to provide basic educational or vocational training to prisoners."); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (holding that the "loss of the opportunity to earn good-time credits" is a

---

[14] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

"speculative, collateral consequence[]" of a prison administrative decision and does "not create [a] constitutionally protected liberty interest[].");  *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (holding that the loss of a prison job did not implicate the prisoner's liberty interest even though the prisoner lost the ability to automatically accrue good-time credits).[15]

Accordingly, the Court should dismiss this claim.

## B.  Showers

Plaintiff claims that he is only allowed to shower once every forty-eight hours.  [doc. # 8, p. 4].  This claim implicates the need to maintain adequate hygiene and health.

However, Plaintiff does not allege that this condition deprived him of any identifiable life need.  Even if he did, the frequency and duration of this condition do not reflect an extreme deprivation, and Plaintiff fails to allege that the condition exposed him to a substantial risk of serious harm.[16]  See *Brumley v. Livingston*, 459 F. App'x 470, 472 (5th Cir. 2012) (affirming dismissal of a plaintiff's claim that he was denied showers "because he failed to properly allege that he was subjected to a substantial risk of harm.").  The Court should dismiss this claim.

---

[15] See *Cobb v. Whittington*, 2016 WL 1019466, at *3 (W.D. La. Feb. 16, 2016), report and recommendation adopted, 2016 WL 1057498 (W.D. La. Mar. 14, 2016) ("While prisoners who are entitled to release on mandatory supervision have a protected liberty interest in previously-earned good-time credits they are not constitutionally entitled to earn such credits.").

[16] See *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) (finding the denial of showers for a three-day period de minimis); *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982) (citing with tacit approval several courts' opinions that "one or two showers a week is sufficient to satisfy constitutional requirements."); c.f. *Bradley*, 157 F.3d at 1025 (finding that a plaintiff stated a claim when he alleged that he was unable to bathe for several months, that he was forced to clean himself with toilet water, and that the unhygienic conditions resulted in a fungal infection requiring medical attention).

**C. Television**

Plaintiff claims that he is not allowed to watch television. This, however, does not amount to an extreme deprivation of a minimal civilized measure of life's necessities. Similarly, Plaintiff does not allege that the absence of television exposed him to a substantial risk of serious harm. The Court should dismiss this claim.

**D. Exercise**

Plaintiff claims that he is denied one hour of "recreational yard call." [doc. # 1, p. 6]. He is permitted outside only once or twice every thirty days. [doc. # 8, p. 4]. Plaintiff also suggests that he is deprived of one hour outside of his cell (i.e. still inside the facility) each day. *Id.*

While some level of exercise is certainly an identifiable life need,[17] Plaintiff does not state a plausible claim. First, that he was deprived of time outside his cell does not mean that he was deprived of any exercise. Next, while he was allegedly deprived of some *outdoor* recreation, he does not describe an extreme deprivation of exercise. He does not, for example, claim that he could not exercise in his cell or (when he was permitted) outside of his cell.[18] He does not explain why the space in which he could exercise was inadequate to his needs. See *Ruiz*, 679 F.2d at 1152 ("Of particular importance in determining an inmate's need for regular

---

[17] See *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), amended in part, vacated in part, 688 F.2d 266 (5th Cir. 1982) (favorably citing other courts' opinions that "inmates need regular exercise to maintain reasonably good physical and psychological health.").

[18] See *Lewis v. Smith*, 277 F.3d 1373 (5th Cir. 2001) (finding a similar claim "meritless because it [was] premised on the erroneous assumption that [the plaintiff] had an absolute right to exercise or recreation."); *Carter v. Hubert*, 452 F. App'x 477, 478-79 (5th Cir. 2011) ("In regard to his unconstitutional conditions of confinement claims that his placement in a restrictive cell program for seven days at a time, for a total of 26 days, resulted in a lack of exercise, deprivation of meals, and flu-like symptoms due to a severely cold cell, Carter has not demonstrated that prison officials violated his Eighth Amendment rights."); *Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979), on reh'g, 636 F.2d 1364 (5th Cir. 1981) ("Our cases have never held that convicted prisoners have a constitutional right to outdoor exercise.").

exercise are the size of his cell, the amount of time the inmate spends locked in his cell each day, and the overall duration of his confinement.") (internal footnotes omitted).

To the extent Plaintiff claims that these conditions deprived him of a physical need to exercise, the Court should dismiss this claim.  Below, the undersigned addresses the same conditions with respect to Plaintiff's alleged deprivation of mental health.

### E. Deprivation of Vitamin D

Plaintiff claims that he is only permitted outside once or twice every thirty days.  [doc. # 8, p. 4].  This is allegedly a health hazard because he is not receiving enough vitamin D from sunlight.  [doc. # 1, p. 6].

While adequate nutrition—including adequate vitamins—is an identifiable life need, Plaintiff does not describe an extreme deprivation, considering he is permitted outside once or twice every thirty days.  Moreover, while he describes a risk of harm due to inadequate sunlight, he does not plausibly describe a *substantial* risk of *serious* harm.  The Court should dismiss this claim.

### F. Mental Health

Plaintiff presents a host of conditions, claiming that, when combined for over approximately the past eight months, they are causing his mental health to deteriorate: (1) he is allowed outside only once or twice every thirty days which, coupled with the lack of sunlight, causes mental anguish and emotional distress; (2) he does not receive one hour out of his cell each day; (3) he is claustrophobic and is in a "small two-man cell"; and (4) he lacks his mental-health medication, Respirdahl.  He allegedly "contemplated suicidal thoughts" and has been placed on suicide watch multiple times.  [doc. # 8, p. 10].

When construed liberally in his favor, Plaintiff plausibly claims that, by enduring the aforementioned conditions over the past seven to eight months, he has been sufficiently deprived of mental health and has been exposed to a substantial risk of serious harm.  See *McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir. 1979) ("[C]onfinement to a cell for twenty-three and one-half hours per day for periods of months and absence of outdoor exercise, may make out an eighth amendment violation. The district court therefore erred in dismissing the complaint for failure to state a claim upon which relief may be granted."); *Hewitt v. Henderson*, 271 F. App'x 426, 427 (5th Cir. 2008) (finding, where the plaintiff alleged that he suffered psychological and physical damage because defendants denied out-of-cell recreation segregation, that he could potentially state a claim depending on the size of his cell, "the degree to which in-cell exercise in fact was practicable," whether he was given a regular exercise alternative, whether he was exposed "to fresh air and sunlight during his recreation periods[,]" the amount of time he was required to spend in his cell each day, the prospective length of his incarceration, and the amount of time he "already has been in administrative segregation.").[19]

To be sure, in *Hernandez v. Velasquez*, 522 F.3d 556, 558 (5th Cir. 2008), the court "upheld a grant of summary judgment in favor of prison officials that had placed a prisoner in

---

[19] See also *Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979) ("If at some point outdoor exercise becomes a serious health need, an unsettled question in the absence of appropriate medical proof, it seems odd that the courts have uniformly held that convicts, serving much longer terms than those ordinarily encountered in jail, have no constitutional right to outdoor exercise."); *Robinson v. Corriveau*, 72 F.3d 138 (10th Cir. 1995) ("Mr. Robinson alleged that he has been deprived of natural light and fresh air for the past seven months (now thirteen months). It is unlikely that such extended deprivation of natural light and air would meet the minimal health and safety needs of prisoners."); *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) ("There is substantial agreement among the cases in this area that some form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates."); *Keith v. Estelle Unit High Sec. Admin.*, 2006 WL 3813771, at *3 (S.D. Tex. Dec. 22, 2006) ("[D]eprivation of sunlight may constitute an Eighth Amendment violation.").

lockdown and denied all outdoor and out-of-cell exercise privileges for thirteen months.  Prison officials suspected he was a member of a gang that was planning a war with a rival gang and confined him to a 5′ x 9′ cell which he shared with another inmate.  [The court] found that even if the prisoner had created a fact issue as to 'muscle atrophy, stiffness, loss of range of motion, and depression, there is nonetheless no indication these conditions posed a substantial risk of serious harm.'"  *Haralson v. Campuzano*, 356 F. App'x 692, 697 (5th Cir. 2009) (quoting *Hernandez*, 522 F.3d at 561).

Here, however, Plaintiff does not allege that he is simply depressed; rather, he alleges that he is suicidal, schizophrenic, and suffers from pre-existing, yet exacerbated, depression, anxiety, and stress.  [doc. # 8, pp. 10-11].

The Court should retain this claim.

**G. Visitation**

Plaintiff claims that he "can only visit on the first and third Sunday of the month . . . behind a glass . . . ."  [doc. # 8, p. 5].

While this condition implicates a need for social interaction, Plaintiff does not describe an extreme deprivation.  He does not allege that he lacked alternative means by which to interact with others (for example, email, telephone, letters, or video), and he does not allege that he lacked interaction with others in the facility.  The Court should dismiss this claim because the alleged deprivation was not, objectively, sufficiently serious.  See *Overton v. Bazzetta*, 539 U.S. 126 (2003) (Prison regulation that subjected inmates with two substance-abuse violations to ban of at least two years on visitation with those outside the prison, subject to their right to apply for a lifting of ban after two years, did not violate the Constitutional prohibition against cruel and unusual punishment); *Martin v. Scott*, 156 F.3d 578, 579 (5th Cir. 1998) (finding no claim where

a prisoner claimed that officials limited his visitation time); *Lair v. Purdy*, 188 F. App'x 250 (5th Cir. 2006) (inmate's claim that he was subjected to harsher visitation restrictions than other inmates, in violation of his rights under the First Amendment, was frivolous and failed to state a claim on which relief can be granted).[20]

## H. Sanitation

Plaintiff claims that defendants will not allow him to use "cleaning chemicals" and that, as a result, his cell is "very" unsanitary. [doc. # 8, p. 4]. He is only allowed to clean his cell "when the officers feel like it," which is "about twice" each month. *Id.* at 5.

Plaintiff, however, never describes the unsanitary conditions and, more important, fails to explain how the alleged unsanitary conditions amount to an extreme deprivation of hygiene or sanitation. This claim is conclusory; the Court should dismiss it.

## I. Telephone Access

Plaintiff claims that he is only allowed to use the telephone every other day at "night time." [doc. # 8, p. 6]. He adds: "Using the phone only at night means that my family and lawyer would be sleep[ing] or working. This causes emotional distress." *Id.*

While deprived of daily telephone access, Plaintiff does not describe an extreme deprivation of, for example, a need for social contact. Moreover, while he suggests that placing telephone calls at night is inconvenient, he does not allege that he has been unable to contact his family or his lawyer. The Court should dismiss this claim. See *Hamilton v. Lyons*, 74 F.3d 99,

---

[20] See also *Bedingfield ex rel. Bedingfield v. Deen*, 487 F. App'x 219, 232 (5th Cir. 2012) (finding no clearly established right to visitation under the First Amendment and noting that, in *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999), where a prisoner was denied visitation with his mother, the court "stated that a prisoner has 'no constitutional right to visitation privileges.'"); *McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir. 1975) ("[V]isitation privileges are a matter subject to the discretion of prison officials and are not a constitutional right.") (quoted by *Adeleke v. Heaton*, 352 F. App'x 904, 908 (5th Cir. 2009)).

106 (5th Cir. 1996) (finding that the denial of visitation and telephone usage for a three-day period did not "constitute cruel and unusual punishment, so as to warrant Eighth Amendment relief."); *Hill v. Estelle*, 537 F.2d 214, 215 (5th Cir. 1976) (dismissing a claim, where the plaintiffs did not complain of an "inability to communicate with courts, counsel, or their families and friends," because "regulations pertaining to making phone calls . . . do not constitute an abuse of the discretion enjoyed by prison authorities.").[21]

**6. Medical Care**

Plaintiff alleges that he lacks his "medications," including his mental-health medication, Respirdahl, and he faults both the named defendants and unnamed "medical personnel." [doc. # 8, p. 10].

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

---

[21] See also *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982) ("A prisoner in maximum security has no right to unlimited telephone use.").

Here, Plaintiff does not specify: when he requested care (if at all), whether he requested either his desired medication or other care for his mental health, to whom he directed his requests, what he requested, or how defendants responded to any requests for care. Distilled, he does not allege that any defendant was deliberately indifferent to a substantial risk of serious medical harm. The Court should dismiss this claim.

## 7. Destroying Grievances

Plaintiff claims that Captain Paul Campbell intentionally destroyed "each and every last one of [the] administrative remedy procedures that [Plaintiff] wrote to be placed in population or concerning mistreatment of Warden Patrick Johnson, Detective Wade Murphy, or [] Paul Campbell." [doc. # 8, p. 2]. He also claims that Campbell denied his "ARP" concerning his inability to participate in good-time classes, college courses, and other classes. *Id.*

A prisoner, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); see *Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process."); *Geiger*, 404 F.3d at 371 (holding that an inmate does not have a "federally protected liberty interest in having [] grievances resolved to his satisfaction."); *Smallwood v. Castillo*, 289 F. App'x 803, 805 (5th Cir. 2008) (finding, where the plaintiff claimed that the defendants destroyed or lost his grievance, that the claim was "without legal basis.").

The Court should dismiss these claims.

**8. Limitation on Recovery Under 42 U.S.C. § 1997e(e)**

The Court should dismiss Plaintiff's request for monetary compensation.

Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

Here, Plaintiff does not allege that he suffered a more-than-de-minimis physical injury or any other injury compensable by monetary relief. Rather, he seeks monetary relief for his emotional distress and mental anguish. [doc. # 8, p. 11].

**9. Request for Transfer**

Plaintiff asks the Court to "grant [him] a change of venue" because "there is no progress in [his] situation," he fears for his life, and he fears that defendants will retaliate. [doc. # 8, p. 11]. The undersigned construes this as a request for a transfer to a different facility rather than a true motion for change of legal venue.

A prisoner, however, has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his

confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.").

Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." LA. REV. STAT. §15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections, the Court should deny his request for a transfer.

## 10. Access to Court

Plaintiff claims that he can only access the law library for approximately fifteen minutes every forty-eight hours. [doc. # 8, p. 8]. Every forty-eight hours, he has only thirty minutes to shower and to try to use the law library on a "kiosk machine." *Id.* As a result, he cannot "properly prepare for trial or future court proceedings" and is unable to "build a solid defense" to establish his innocence. *Id.*

To succeed on a claimed denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a claim of denial of access to the courts, a plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). "[T]he

23

complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it."[22]  *Christopher*, 536 U.S. at 417-18.

"Denial-of-access claims take one of two forms: forward-looking claims alleging 'that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time,' and backward-looking claims alleging that an official action has 'caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief.'" *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (quoting *Christopher*, 536 U.S. at 413-14).

"To maintain a backward-looking claim, a plaintiff must identify (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another suit that may yet be brought." *United States v. McRae*, 702 F.3d 806, 830-31 (5th Cir. 2012); see *Christopher*, 536 U.S. at 413-14 (("These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable.").

With respect to the inability to access a library or a claim that a library was deficient, an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351.  "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical

---

[22] "The underlying claim must be described well enough to apply the frivolity test and to show that its 'arguable' nature . . . is more than hope."  *Sanchez v. Stephens*, 689 F. App'x 797, 799 (5th Cir. 2017) (citing *Christopher v. Harbury*, 536 U.S. 403, 416 (2002)).

requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* The "inmate must show that a nonfrivolous, arguable claim he wished to bring has been lost or rejected due to the deficiency or that the deficiency is currently preventing his presentation of such a claim." *Sanchez*, 689 F. App'x at 799.

Here, Plaintiff vaguely references trial, "future court proceedings," and a defense of innocence, but he does not identify a claim, defense, or proceeding that he cannot presently prepare or file, that he could not prepare or file in the past, that he lost, or for which he could not obtain a remedy. Even assuming he did, he does not allege that inadequate time at the kiosk prevented him from filing, or caused him to lose, the claim(s). Similarly, he does not explain how additional access to the law library kiosk would have aided him, "how he would have proceeded with access to a law library," what specific cases or law he would have cited if he had access to the law library, "or how [his] claims would have been meritorious." See *Hopkins v. Ogg*, 2019 WL 3761360, at *3 (5th Cir. Aug. 8, 2019).

The Court should dismiss this claim.

## <u>Recommendation</u>

For the foregoing reasons, **IT IS RECOMMENDED** that, with the exception of Plaintiff Triney Lavelle Price's claims that he is denied his right to practice his religion and that he is confined under conditions depriving him of mental health, Plaintiff's claims, as well as his request for a transfer and his requests for monetary relief, be **DISMISSED** as frivolous and for

failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 26th day of February, 2020.

Karen L. Hayes
United States Magistrate Judge